# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **EVA MILLER** | **CIVIL ACTION NO. 16-1066** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **THE SUMMIT HEALTH AND REHAB SERVICES, INC. AND WEST MONROE GUEST HOUSE, INC.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court are Motions for Summary Judgment filed by Defendant The Summit Health and Rehab Services, Inc. ("Summit") [Doc. No. 23] and Defendant West Monroe Guest House, Inc. ("Guest House") [Doc. No. 27]. Defendants move for summary judgment on all claims asserted by Plaintiff Eva Miller ("Miller").

For the following reasons, the Motions for Summary Judgment are GRANTED.

## I.    FACTS AND PROCEDURAL HISTORY

Summit supplies personnel to nursing homes and health care facilities for the purposes of providing physical, speech, daily living skills, and other types of rehabilitation services. The Guest House is one of Summit's clients. It is a long-term healthcare facility or nursing home in West Monroe, Louisiana. Both of these entities are private businesses which had a contractual relationship.

Summit hired Miller as a Rehab Technician in November 2009. The offer letter informed her that her "[a]cceptance of employment . . . does **NOT** create a fixed term of employment and the relationship may be terminated by either the employer or the employee at any time . . . ." [Doc. No. 23,

Miller Depo., Exh. 1].  Miller admits that this offer letter was the only purported "employment contract" she had.

As a Rehab Technician, Miller assisted licensed therapists with patients, including transporting patients from their rooms to the therapy room, either by walking them or by wheelchair.  A Rehab Technician is not a licensed position, nor does it require any sort of specialized training or education. Miller did not provide treatment, but assisted patients with exercises under the instructions of and in the presence of a licensed therapist.

On June 23, 2015, Miller agreed to help Sheila Eddins ("Eddins"), a certified nursing assistant employed by the Guest House, with a female resident, P.[1]  P was a Guest House long-term care resident who had both physical and mental disabilities and was unable to walk.  P had soiled her herself and the bed, and Eddins was having trouble with P and needed help.  Although it was not part of P's therapeutic services, Miller had built a rapport with P and believed she could help with P, even if she were being uncooperative.  As Miller was trying to change P, P resisted and told Miller to stop by saying "no." According to Miller, P was fussing and crying and told Miller to leave her alone.   P also hit out at Miller and tried to scratch Miller with her fingernails.   Before Miller was able to remove P's shirt, P put her hands over her face.  Miller grabbed P's hands and pulled them down as P resisted.

At some point, Eddins left to get fresh sheets while Miller finished cleaning and changing P. Once P was changed and put back in her bed, Miller told Eddins that they needed to document some fingernail scratches they found on P's bottom and legs, which Miller believed were self-inflicted. Miller did not see any bruises on or near P's hands.

At approximately 5:25 p.m. on June 23, 2015, a Guest House nurse, Debra McDowell, told

---

[1]The parties have omitted the patient's name to protect her privacy.

Maradye Rinehart ("Rinehart"), the Guest House Administrator, that P had sustained visible and fresh bruises to her right hand and arm. Rinehart went to see P, and she believed that P's bruises had been caused by pressure from someone's fingers. A color photograph was taken of the bruising.

In accordance with state law, Rinehart began an investigation into the cause of P's bruises. When Rinehart learned that Eddins and Miller changed P earlier that day, Rinehart suspended Eddins and requested that Summit suspend Miller from her Guest House assignment pending further investigation.

At approximately 9:08 p.m. that same evening, Miller met in person with Rinehart and Marta Mathis ("Mathis"), Guest House Assistant Administrator, to discuss the incident. Miller told Rinehart and Mathis that she had been assisting Eddins in changing P's bedding and clothes, and P had resisted and told Miller to stop what she was doing, but Miller continued. Miller also told Rinehart and Mathis that P brought up her hands to her face and that Miller pulled P's hands and arms down. Miller physically demonstrated on Mathis how she grabbed P and how hard she pulled P's hands and arms down.

The Guest House's security camera recorded video of the interview. During Miller's demonstration, the video shows Miller grabbing Mathis' hands and arms in the same areas where the bruises actually appeared on P's hands and arms. The force used by Miller during the demonstration was enough to cause Mathis' upper body to rock forward from where she was seated.

The next day, June 24, 2015, Rinehart and Patches Carr, a Guest House nurse, visited P in her room. Rinehart showed P a picture of Miller and of Eddins and asked P if either of these persons had hurt her. P identified Miller as the person who hurt her.

Based on the investigation, Rinehart concluded that Miller caused P's bruising by pulling P's

arms and hands down after P had expressly informed Miller to stop, but she did not believe Miller intended to hurt P. Miller admits she did not follow protocol and respect P's wishes when P said "no" and to leave her alone.

At approximately 4:00 p.m. on June 24, 2015, Ryan McDonald ("McDonald"), Summit Louisiana Area Manager, met with Miller and Rinehart at the Guest House. McDonald informed Miller that her employment with Summit was terminated because of this incident.

The only people Rinehart spoke to regarding the incident and/or investigation were McDonald; Dena LaBorde ("LaBorde"), Rinehart's direct supervisor at the Guest House; and Dianne Anders ("Anders"), the Guest House's Director of Nursing. Miller admits she has no facts or other credible evidence that Rinehart or any other employee from the Guest House said anything to anyone about Miller's termination or the reasons for the termination. Although others were purportedly aware of her termination or the purported reasons for the same, Miller admits she told various co-workers (among others) about the reasons she was terminated.

Rinehart also prepared a summary of the investigation which she sent to the State of Louisiana.

Miller never saw Eddins or anyone else touch P in the same areas where the bruises actually appeared on P's hands and arms on June 23, 2015. Miller admits she has no facts or evidence to contradict Rinehart's belief that Miller's actions inadvertently caused P's bruises; in fact, she admits that the Guest House and Summit probably believed that.

Within two weeks of her termination, Miller found subsequent employment, although she contends that she receives a lower rate of pay.

On June 22, 2016, Miller filed a Petition for Defamation and Breach of Contract against Defendants in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana. In addition to

4

her claims of defamation and breach of contract under state law, Miller asserts a claim that she was denied a pre-termination hearing in violation of her due process rights under the United States and Louisiana Constitutions.

On July 19, 2016, Defendants removed the case to this Court.

On May 11, 2017, the Guest House filed a Motion for Summary Judgment on all of Miller's claims. [Doc. No. 23]. The same day, Summit also filed a Motion for Summary Judgment on all of Mller's claims. [Doc. No. 27]. On May 31, 2017, Miller filed memoranda in opposition to Defendants' motions. [Doc. Nos. 31 & 32]. On June 5, 2017, Summit filed a Reply [Doc. No. 33]. Finally, on June 13, 2017, the Guest House filed a Reply. [Doc. No. 35]. The motion is fully briefed, and the Court is now ready to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute

about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In a bench trial, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir.1991). A court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* at 398 (citing *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir.1978)).

B.      **Breach of Contract**

Miller asserts breach of contract claims against Defendants.

A federal court sitting in diversity must apply the substantive law of the state. *Erie R. Co. v. Tomkins*, 304 U.S. 64 (1938). Under Louisiana law, employment "contracts" are of two types: a contract for a fixed time, *see* LA. CIV. CODE ART. 2746, and the contract of an employee terminable at the will of the parties, *see* LA. CIV. CODE ART. 2024, 2747. Because "there is a presumption that employment is 'at will,'" "the party relying on an alleged contract of employment for a 'fixed term' has the burden of proving that there was a meeting of the minds on the length of time of employment."

*Chandler v. Kenyan*, 38,084 (La. App. 2 Cir. 12/19/03), 862 So. 2d 1182, 1184-85 (citing *Brodhead*

*v. Board of Trustees for State Colleges and Universities*, 588 So.2d 748 (La.App. 1st Cir.1991), writ

denied, 590 So.2d 597 (La.1992). "An action for compensation due under the unexpired term of a

'fixed term' employment contract by a discharged employee" sounds in contract, and, typically, this

action "carries with it the right of the employee to receive all wages or salary due under the contract

except in those instances in which he is discharged for cause." *Id.* at 1185 (citation omitted). If the

employment is terminable at the will of either the employer or the employee, there is no action for

breach of contract. *See Brannan v. Wyeth Labs.*, 526 So.2d 1101, 1104 (La. 1988).

### 1. Breach of Contract Claim Against Summit

Miller offered no response to Summit's arguments with regard to her breach of contract claim

and has failed to oppose the evidence upon which it relies. The Summit Offer Letter to Miller expressly

stated that it " does **NOT** create a fixed term of employment." [Doc. No. 23, Miller Depo., Exh. 1].

Additionally, her signed Employee Acknowledgment Form provided "that there is no specified length

of employment." [Doc. No. 23, Miller Depo., Exh. 2]. Miller was clearly an employee at will, and,

thus, has no cause of action for breach of contract based on the Offer Letter. Summit's Motion for

Summary Judgment on Miller's breach of contract claim is GRANTED, and this claim are DISMISSED

WITH PREJUDICE.

### 2. Breach of Contract Claim Against the Guest House

Miller offered no response to the Guest House's arguments with regard to her breach of contract

claim either. Miller was employed by Summit, not Guest House. While she was assigned to the Guest

House and had worked there for many years, there is no record evidence that Miller and the Guest

House had any type of oral or written contractual relationship. Accordingly, Miller has no cause of

action for breach of contract against the Guest House. The Guest House's Motion for Summary Judgment on Miller's breach of contract claim is also GRANTED, and this claim are DISMISSED WITH PREJUDICE.

###    C.    Defamation

Miller asserted a claim against Defendants for defamation.

Defamation is a tort by which a person's reputation or good name is sullied. *See Hakim v. O' Donnell*, 49,140 (La. App. 2 Cir. 6/25/14), 14 So.3d 1179, 1185-86 (citation omitted). A successful defamation plaintiff must demonstrate the following by a preponderance of the evidence: (1) a false or defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Id*. at 1186. (citing *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So.2d 669, 674; *Costello v. Hardy*, 2003-1146 (La. 1/21/04); 864 So.2d 129; *Trentecosta v. Beck*, 1996-2388 (La. 10/21/97), 703 So.2d 552). Truth is a defense to defamation. *Freeman v. Cooper*, 414 So.2d 355 (La. 1982); *Martin v. Lincoln Gen. Hosp.*, 588 So.2d 1329 (La. App. 2 Cir. 1991).

A defamatory statement must be published, that is, communicated to someone other than the plaintiff. *See Daigle v. Computrac*, 835 F.Supp. 903, 906 (E.D. La. 1993) (citation omitted). However, a plaintiff will not prevail if a defendant's defamatory communication is subject to an absolute[2] or qualified privilege. *See Madison v. Bolton*, 234 La. 997, 102 So.2d 433, 439 n.7 (1958). "The doctrine of privilege rests upon the notion that sometimes, as a matter of public policy, in order to encourage the free communication of views in certain defined instances, one is justified in communicating defamatory

---

[2]Absolute privilege refers to, for example, statements by judges in a judicial proceeding or legislators during legislative proceedings. The absolute privilege is not at issue in this case.

remarks to another without incurring liability." *Id*. (citing *Toomer v. Breaux*, 146 So.2d 723, 725 (La. App. 3 Cir. 1962). The elements of the qualified privilege are "'good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only.'" *Ioppolo v. Rumana*, 581 Fed. App'x. 321, 331-32 (5th Cir. 2014) (citations omitted).

In *Smith v. Our Lady of the Lake Hosp., Inc*., 93-2512 (La. 7/5/94), 639 So.2d 730, the Louisiana Supreme Court set forth a two-step process for determining whether the qualified privilege applies to defeat a plaintiff's claim. First, the court must determine, as a matter of law, whether "the attending circumstances of a communication occasion a qualified privilege." *Kennedy*, 935 So.2d at 682 (citing *Smith*, 639 So.2d at 745). The second step asks whether the privilege was abused. *Id*. This second step is normally a fact question for the jury unless the record will allow only one conclusion. *Id*. (citation omitted). But, despite that general pronouncement, Louisiana courts have not been hesitant to grant summary judgment on qualified privilege grounds in practice. *See, e.g., Callahan v. Circuit City Stores, Inc*., 2006-1663, (La. App. 1 Cir. 10/10/07), 971 So.2d 1116, 1120; *Hakim*, 144 So.3d at 1190, 1191; *Kennedy*, 935 So.2d at 689.

In order to show that the privilege was abused, the plaintiff must show that the defendant actually knew the statement was false, or acted in reckless disregard with respect to its mendacity. *Hakim*, 144 So.3d at 1190. Once successfully raised by the defendant, the plaintiff must prove the privilege is inapplicable. *Id*.

In this case, Miller alleges that both Defendants made defamatory statements about her.

### 1. Alleged Defamation by Summit

With regard to her claim against Summit, Miller relies on statements by her former supervisor,

McDonald. Immediately after her termination, Miller asserts that McDonald said "we had to let Eva go" and, though she is unaware of the precise statement, that the reason for her termination was "I had supposedly abused a patient." [Doc. No. 23, Miller Depo., pp 86-87]. She also claims that someone, whom she believed to be McDonald, also communicated this information to patients and their family members at the Guest House.

However, Miller did not hear any statement by McDonald, nor could she provide the precise statement allegedly made by him. McDonald attested that he went to the therapy room at the Guest House and informed the employees generally that Miller was no longer employed by Summit, but that he did not give specific reasons for her termination or the incident that gave rise to her termination. McDonald denies communicating about Miller's termination with anyone else.

Miller has failed to re-but McDonald's attestation with competent summary judgment evidence. Miller claims that co-workers and patients heard the alleged defamatory statements, going so far as to give the names of these individuals. However, she has failed to provide affidavits or deposition testimony (other than her own) to support these assertions; she relies only on hearsay and her counsel's arguments, neither of which is sufficient to raise a genuine issue of material fact for trial that Summit, either through McDonald or another employee, made a defamatory statement. *See* FED. R. EVID. 801; *Tucker v. SAS Ins. Inc.*, 462 F.Supp.2d 715, 723 (N.D. Tex. 2006) ) ("[B]riefs themselves, like an attorney's opening or closing argument in trial are not evidence.").

Further, given the undisputed facts in this case, Summit has produced sufficient evidence that any such statements were either true, made in good faith, or subject to a qualified privilege. Accordingly, Summit's Motion for Summary Judgment on Miller's defamation claim is GRANTED, and this claim are DISMISSED WITH PREJUDICE.

### 2.      Alleged Defamation by the Guest House

Miller also asserts a defamation claim against the Guest House, but she admits that she has no evidence that Rinehart or any other employee of the Guest House made statements about Miller's termination by Summit.  Although Miller claims that others were aware of her termination and the reasons for it, she also admits that she told co-workers about the reasons.  In short, Miller simply has no evidence that statements were made by anyone which could be attributed to the Guest House.

In her opposition memorandum, she argues that "the defamatory speech could have come from Rinehart." [Doc. No. 32-2, p. 6].  This is simply not enough to meet her burden of establishing a genuine issue of material fact for trial that a defamatory statement was made by someone whose conduct could be attributed to the Guest House.

Further, to the extent that Rinehart made a report to the state, this fact cannot be the basis of her defamatory action because Rinehart and the Guest House are mandatory reporters under La. Rev. Stat. §§ 15:1504(A) & (B).  Accordingly, the Guest House's Motion for Summary Judgment is GRANTED, and Miller's defamation claim is DISMISSED WITH PREJUDICE.

### D.      Deprivation of Civil Rights

Miller also brought claims against Defendants under the Fourteenth Amendment to the United States Constitution and Louisiana Constitution, Articles 1 & 2 and/or 4.  Miller contends that she was denied due process rights because she was terminated without a hearing.  However, she failed to respond to Defendants' arguments in their Motions for Summary Judgment.

Under the Due Process Clause of the Fourteenth Amendment, no state "shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND XIV. Federal due process claims are asserted under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

The Louisiana Constitution, Article I, Section 2 provides: No person shall be deprived of life, liberty, or property, except by due process of law." LA. CONST. ANN. ART. I, § 2. The Louisiana constitutional clauses are "substantially equivalent" to federal clauses, and thus, courts "apply the same analysis to [a] plaintiff['s] state and federal claims." *Powers v. United States*, 783 F.3d 570, 577 (5th Cir. 2015) (citing *Bd. of Comm'rs of Orleans Levee Dist. v. Dep't of Natural Res.*, 496 So.2d 281, 291 (La. 1986)).[3]

"The due process . . . clauses of the Constitution of the United States of America and the Constitution of the State of Louisiana apply only to state action and do not apply to private action." *Miller v. Blanchard*, No. CIV.A. 02-2347, 2002 WL 31819122, at *1 (E.D. La. Dec. 12, 2002) (citing *Morris v. Dillard Department Stores, Inc.*, 277 F.3d 743, 747 (5th Cir.2001); *Guarantee Trust Life Insurance Company v. Gavin*, 882 F.2d 178, 181 (5th Cir.1989); *Country Club of Louisiana Property Owners Association, Inc. v. Dornier*, 691 So.2d 142, 146 (La.Ct.App.1997)). In this case, Miller has sued only private actors and seeks recovery for what appears to be a private act–her termination. Miller has not alleged any facts to support a showing that Defendants acted under color of state law.

---

[3]Miller cites to Articles 1, 2 and/or 4 of the Louisiana Constitution. Article 1 contains the constitutional provisions on the Declaration of Rights; Article 2 contains the constitutional provisions on the Distribution of Powers; and Article 4 contains the constitutional provisions on the Executive Branch. Despite these citations and the lack of citation to a subsection, Miller appears to have asserted a procedural due process claim under the Louisiana Constitution.

Further, even if Miller could establish that there was some connection to the State, she must also establish that she suffered a deprivation of her Due Process rights. She cannot meet this showing either. An employee-at-will has no legitimate expectation of continued employment, and, thus, no property interest. Without a property interest to protect, she had no right to the procedural due process protections of a pre-termination hearing from Summit. The Guest House, of course, did not even employ her, so it could not be required to provide a hearing. Accordingly, Defendants' Motions for Summary Judgment are GRANTED as to her state and federal constitutional claims, and these claims are DISMISSED WITH PREJUDICE.

## III. CONCLUSION

For the foregoing reasons, the Motions for Summary Judgment [Doc. Nos. 23 & 27] are GRANTED, and Miller's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 16th day of June, 2017.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**